## WESTERN UNION TELEGRAPH CO. v. KAUFMAN et al.

No. 7020—Opinion Filed Jan. 9, 1917.

(162 Pac. 707.)

**1. Commerce—Power to Regulate—Exclusive or Concurrent Powers.**

Same as in Western Union Telegraph Company v. Bank of Spencer, 53 Okla. 398, 156 Pac. 1175.

**2. Commerce—Telegraphs and Telephones—Exclusive Power of Congress—Limitation of Liability—Validity.**

Same as in Western Union Telegraph Company v. Bank of Spencer, 53 Okla. 398, 156 Pac. 1175.

**3. Commerce — "Interstate Commerce" — What Constitutes.**

A telegraph company in the transmission of a message from one point in the state to another point in the state where the usual, customary, and necessary route for the transmission thereof is over the company's line, a part of which is located outside of the state, is engaged in an act of interstate commerce, and the same is subject to and controlled by the federal law applicable thereto

(Syllabus by Hooker, C.)

Error from District Court, Caddo County; Will Linn, Judge.

Action by M. Kaufman and others against the Western Union Telegraph Company. There was a judgment for plaintiffs, and defendant brings error. Reversed and remanded.

Keaton, Wells & Johnston, for plaintiff in error.

Opinion by HOOKER, C. The plaintiffs below sued the company for damages alleged to have accrued to them for nondelivery of a telegram sent from Apache, Okla., to Henry-

etta, Okla., by them to Reynolds Bros., on June 3, 1916. The answer of the company alleged it was engaged in interstate commerce, and that the message in question was an interstate message, in that to transmit the same from Apache to Henryetta it was necessary to and this message was transmitted from Apache, Okla., over the wires of the company to Wichita, Kan., and was forwarded from Wichita to Henryetta, and that such routing of said message was the regular, usual, and customary one used by the company in transmission of a message from Apache to Henryetta, and the company also pleaded as special defenses: (1) the unrepeated clause limiting the recovery of an unrepeated message to the cost or value paid; (2) the agreed valuation clause limiting the same to $50; (3) the 60-day clause providing that written notice of a claim must be filed with the company within 60 days. And it was alleged in the said answer that these conditions were not complied with. A demurrer to said special defenses was filed by defendants in error and sustained by the court. Was the court right?

This court, in Western Union Telegraph Company v. Spencer, 53 Okla. 398, 156 Pac. 1175, said:

"(1) Act Cong. June 18, 1910, ch. 309, 36 Stat. 539, amending the act to regulate commerce (Act Feb. 4, 1887, ch. 104, 24 Stat. 379), which placed telegraph companies, with respect to interstate business, in the same class as other common carriers and made such companies liable under the federal law for any dereliction of duty, supersedes all state laws on the subject.

"(2) A stipulation, on the back of a regular printed form upon which messages are written that a telegraph company will not be liable for mistakes or delays in the transmission or delivery of an unrepeated message beyond the amount received for sending the same, and a further stipulation that the company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing in 90 days after the message is filed with the company, are as applied to interstate messages valid and binding upon the sendee of such message, and are not affected by section 9, art. 23, Const."

This rule was later followed by this court in Western Union v. Orr et al., 60 Okla. 39, 158 Pac. 1139. The pleadings here show that the message was written on the regular form with the stipulations given above printed on the back thereof, and if the message was an interstate one, then under rule announced in this Spencer Case, supra, the answer stated a defense, and it was error to sustain a demurrer thereto. Was this an interstate message?

In Leibengood v. M., K. & T. R. Co., 83 Kan. 25, 109 Pac. 988, 28 L. R. A. (N. S.) 985, the Supreme Court of Kansas said:

"The act requiring corporations and others operating railroads as common carriers to transport live stock within the state at a speed of not less than 15 miles per hour, unless prevented by some unavoidable cause (Laws 1907, ch. 276), does not apply to nor affect interstate commerce, and a shipment of live stock between points in the state which passes for a short distance over the territory of another state is interstate commerce, and noncompliance with the requirements of the statute in such a shipment affords no grounds for recovery against the carrier."

And in the body of the opinion, at page 28 of 83 Kan., at page 989 of 109 Pac. (28 L. R. A. [N. S.] 985), the court said:

" 'To bring the transportation within the control of the state, as part of its domestic commerce, the subject transported must be within the entire voyage under the exclusive jurisdiction of the state.' The route of carriage was out of the state a very short distance, it is true; but, as we have seen, the shipment is to be treated as a unit, and the rule in such a case would appear to be the same whether the act of transportation was outside of the state one or a hundred miles."

This doctrine is likewise approved by the Supreme Court of North Carolina, in Hickory Marble Co. v. Southern R. Co., 147 N. C. 53, 60 S. E. 719; Shelby Ice & Fuel Co. v. Southern R. Co., 147 N. C. 66, 60 S. E. 721; Davis v. Southern R. Co., 147 N. C. 68, 60 S. E. 722; and Shelby Ice & Fuel Co. v. Southern R. Co. 147 N. C. 61, 60 S. E. 723. Also in Traynham v. Railway Co., 71 S. E. 813, the Supreme Court of South Carolina said:

"It is conceded that the transportation in this case is interstate because partly in another state, under the authority of Hanley v. Kansas City R., 187 U. S. 617 [23 Sup. Ct. 214, 47 L. Ed. 333], and that * * * legislation cannot be allowed to operate so as to materially affect or burden such transportation. * * *"

And in the syllabus it is said:

"A shipment from one point in the state to another point in the same state is nevertheless interstate commerce where the route of the railroad between those two points lies partly within the boundaries of another state."

And in St. L., etc., R. Co. v. State, 87 Ark. 562, 113 S. W. 203, the Supreme Court of Arkansas said:

"To bring a transportation of freight within the control of a state as a part of its domestic commerce, the subject transported must be for the entire distance carried under the exclusion of the state.

"A continuous transportation of freight between points within the state is 'interstate commerce,' free from interference of the state, where a part of the route is outside of the state because of the unsafe condition of a bridge forming a part of the line of road in the state between such points."

We have not been furnished with a brief by the defendants in error, but under the authorities above cited, and others which we have investigated, we have reached the conclusion that the act of the plaintiff in error in the transmission of this message was an act of interstate commerce, and that the special defenses which they pleaded and relied upon here were good, and that the trial court committed an error in sustaining a demurrer thereto.

The judgment of the trial court is therefore reversed, and this cause remanded.

By the Court: It is so ordered.