**PETROLEUM RENTAL SERVICES, INC., an Oklahoma corporation, Appellee,**

v.

**INTER–SOUTH PROPERTIES CORPORATION, Appellant.**

**No. 66153.**

Court of Appeals of Oklahoma, Division No. 2.

Dec. 22, 1987.

---

Robert M. Kane, Kane, Kane, Kane and Roark, Bartlesville, for appellee.

John C. Moran, Oklahoma City, for appellant.

## OPINION

MEANS, Presiding Judge.

Defendant appeals from the trial court's order which overruled its motion to vacate a default judgment. Having reviewed the record and applicable law, we reverse and remand.

On March 4, 1983, Plaintiff and Defendant's predecessor in interest, Southern Oklahoma Production Company, executed a promissory note and mortgage for oil and gas leases and mineral interests. The terms of the entire note are set out below:

FOR VALUE RECEIVED, the undersigned promises to pay to the order of PETROLEUM RENTAL SERVICES, INC., the principal sum of Two Hundred Seventeen Thousand Five Hundred and $^{00}/_{100}$ ($217,500.00) Dollars, with interest from date at the rate of Twelve (12%) Percent Per Annum on the unpaid balance until paid.

As of June 1, 1983, and on the 1st day of each successive month until paid, there shall be applied a sum equal to Twenty-five (25%) Percent of the net proceeds of the capitalized properties received by Southern Oklahoma Production Co., "net proceeds" being defined as those proceeds attributable to hydrocarbon production from the properties less production tax, and windfall profits taxes. Application of these proceeds shall be first applied to accrued interest, with the balance being credited to principal. The monthly installments received by Southern Oklahoma Production Co. as net proceeds of the capitalized properties shall be payable hereunder only as if and when received by Southern Oklahoma Production Co. It is, however, anticipa-

ted that said proceeds will be received by Southern Oklahoma Production Co. and paid to Petroleum Rental Services, Inc. on approximately the 1st day of each successive month. This Note shall be due and payable in full on December 1, 1985. In any event, the full amount of the indebtedness called for by this note shall be paid by Southern Oklahoma Production Company on or before the 1st of December, 1985.

In the event this note is placed in the hands of an attorney for collection, then, in said event, the maker hereof agrees to pay a reasonable attorney fee for the collection hereof.

The note contains no provision concerning acceleration or default. Over the next two and a half years, Defendant made payments on the note of nearly $60,000 out of its net proceeds.

On August 15, 1985, Plaintiff filed this action to collect on the promissory note. In its petition, Plaintiff made the following statements:

5. That the conditions of said Mortgage and Note have been broken in that Southern Production Company and its successor, the Defendant, Inter–South Properties Corporation, have made no payments on the same.

6. Plaintiff further states that by reason of the premises and by the default of Southern Oklahoma Production Company and its successor, the Defendant, Inter–South Properties Corporation, to make said payments as due, the conditions of said Mortgage have been broken and the whole amount of the debt thereby secured has matured and is now due and payable together with interest at the rate of twelve percent (12%) per annum from the 4th day of March, 1983, as well as reasonable attorney's fee and, therefore, Plaintiff is entitled to the foreclosure of the said Mortgage on the said oil and gas leases and to have the same sold to satisfy the said indebtedness.

Plaintiff named Inter–South as a defendant as well as thirteen other individuals and corporations allegedly claiming some type of interest in the leases. Plaintiff attached copies of the mortgage and note which by its terms was not due until December 1, 1985, approximately two and a half months in the future. The petition was signed by Plaintiff's attorney.

On September 9, 1985, Inter–South received a letter from Bigheart Pipe Line Corporation, dated September 6, 1985, informing it that its interests on the leases were "being placed in suspense due to Petition and Lis Pendens Notice filed of record by Petroleum Rental Services, Inc., Plaintiff Case No. C–85–523." Thus, this premature action effectively prevented Defendant from making payments on the note after September 6.

The Defendants, including Inter–South Properties, were properly served. In spite of the fact that it had been properly served and was not in default, Inter–South filed no responsive pleading. Although Inter–South did not file an answer or motion to dismiss, one of the defendants, Keystone Beard Equipment Company, filed an answer on August 22, which alleged that "the promissory note held by the Plaintiff is not due and, accordingly, is not in default."

On October 23, 1985, still more than a month before the note was due, the trial court entered a default judgment for Plaintiff for the total amount of the note, $217,500, plus interest and $15,000 in attorney's fees. The court's order also foreclosed the mortgage and allowed Plaintiff to execute on the judgment and sell the leases.

On November 22, 1985, after the default judgment had been entered, but within thirty days of the judgment, Inter–South filed an answer and a motion to vacate the default judgment. Inter–South's basic complaint was that the judgment was void because the note was not yet in default. It also complained that the court had entered judgment without hearing any evidence concerning the amount which had been paid on the note.

While the motion to vacate was pending the leases were appraised at $100,000 and subsequently sold for $66,667 to Plaintiff at a sheriff's sale on December 23, 1985.

On January 16, 1986, Plaintiff filed a motion to confirm the sheriff's sale and a request for a deficiency judgment of $239,658.96. At this time Defendant's motion to vacate was still pending and Plaintiff was still asserting that Defendant had paid nothing on the note, a fact which is not even arguably true.

On January 23, 1986, three months after Defendant's motion to vacate was filed, Plaintiff filed a response to the motion to vacate. In its response Plaintiff contended that notice of the taking of the default judgment was not required because Defendant had never filed an appearance. Plaintiff also asserted that the motion to vacate was not timely filed and that Defendant's conduct was "harsh and dilatory. It should not be allowed to abuse the rules of the court. It has offered no defense to the note and mortgage, which is now due and payable." On this date Plaintiff also filed an amended motion for a deficiency judgment. In this document Plaintiff for the first time apprised the court of payments of $54,796.53 which Defendant had made.

On January 30, 1986, Defendant filed an objection to the sheriff's sale, again asserting that the underlying judgment was void and premature. Defendant once again pointed out false statements in the original petition and argued that the petition did not state a cause of action because the note had not yet become due.

On January 31, 1986, the trial court finally heard evidence concerning the amount owed on the note and the amount which had been paid. She also heard argument from both parties concerning the original default judgment entered in October 1985. In response to these arguments, counsel for Plaintiff stated:

> The Answer of the Defendant, in effect, admitted that the Note was due on December 1 of 1985. This may have been a premature judgment given. Just for the sake of argument, you might say this was a premature judgment, because the language of the Note didn't call for it to be due until December of 1985. It is now past December of 1985 and the outstanding amount of this Note is still unpaid. It is due.

Thus, Plaintiff's attorney recognized that the note was not due at the time the default judgment was entered, yet he asserted that now it was due so basically there was no harm done.

The trial court took the matter under advisement and later overruled the motion to vacate. However, she did vacate the judgment as to some of the defendants and also vacated the award of attorney's fees because no evidence had been taken concerning the amount of the fees.

On June 4, 1986, the trial court heard arguments on the motion to confirm the sheriff's sale and the award of attorney's fees. At this hearing, the court finally took evidence concerning the fees. Once again Defendant objected that the underlying judgment was void at the time it was entered. The court confirmed the sale and set the deficiency judgment at $169,762.43, with interest, and awarded attorney's fees of $3,200. From these orders Defendant has appealed.

On appeal Defendant once again argues that the default judgment entered in October 1985 was void. As a basis for this argument Defendant reasons that because the note was not yet in default, Plaintiff's cause of action had not accrued. Defendant further complains that the court entered the default judgment without taking any evidence. Finally, Defendant complains that the petition contains false allegations and that under 12 O.S.Supp. 1987 § 2011, sanctions should be imposed against Plaintiff's attorney.

Initially it must be noted that default judgments are never viewed with favor. *Midkiff v. Luckey,* 412 P.2d 175, 176 (Okla.1966) (per curiam). It is a policy of law to afford every party to an action a fair opportunity to present his side of a cause of action. *Singleton v. LePak,* 425 P.2d 974, 977–78 (Okla.1967) (per curiam). At the same time, an application to vacate a default judgment is addressed to the sound discretion of the trial court. *Leslie v. Spencer,* 170 Okl. 642, 42 P.2d 119 (1935) (per curiam) (syllabus 1). This discretion,

however, should always be exercised to promote the ends of justice by permitting a litigant to have his day in court. *Burroughs v. Bob Martin Corp.*, 536 P.2d 339, 342–43 (Okla.1975).

■ Lack of diligence on the part of one's attorney is usually not an excuse which may be used to vacate a default judgment. *See, e.g., Concannon v. Hampton*, 584 P.2d 218, 220 (Okla.1978). At the same time, the court must heed the language of *Beck v. Jarrett*, 363 P.2d 215, 218 (Okla.1961) (per curiam), which states:

> While it is true that diligence of litigants in attending to their matters pending in the courts is of importance, and while it is a significant function of the courts that the litigation before them be determined and disposed of as rapidly as possible, it is also important that all litigants be given a reasonable opportunity to have their day in court, and to have their rights and liberties tried upon the merits. The latter is and should be the primary right of the parties and duty of the courts.
>
> . . . .
>
> The courts should always be loath to deny a determination of a case upon its merits by reason of the actual or supposed fault of an attorney and one of the parties litigant.

As a further consideration, a judgment which is taken by default on a complaint which fails to state a cause of action is void. *Western Union Telegraph Co. v. Beach*, 88 Okl. 73, 211 P. 1034 (1923) (syllabus 4).

■ Plaintiff argues that the default judgment was proper because Defendant failed to file a motion to dismiss before it filed an answer. In support of its contention Plaintiff cites language from 12 O.S. Supp. 1987 § 2012(B), which provides that a motion to dismiss for failure to state a claim or cause of action upon which relief can be granted is waived if not filed before or with the answer. While Plaintiff's statement is a true reading of the statute, subsection 2012(B) states that every defense shall be asserted in the responsive pleadings, and then allows some particular defenses to be raised in motions. However, the subsection also states: "No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion." In the instant case, Defendant raised all its objections and defenses, including the fact that the note was not in default, in its answer filed on November 22, 1985, contemporaneously with the motion to vacate. Thus, Defendant did not waive these defenses because they were raised at the same time and in the same pleading as the answer.

Contrary to Plaintiff's assertion, section 2012 provides that an entry of appearance waives certain defenses, including the defense based on a failure to state a claim or cause of action. These defenses are not waived if raised in the answer with any other defenses which might be raised. Defendant Inter–South did not file an entry of appearance, and thus did not waive certain matters included in section 2012.

On the other hand, Defendant contends that Plaintiff has procured the judgment through a fraud on the court. In support of this contention, Defendant argues that Plaintiff's petition contains false statements designed to mislead the court. On the face of the petition and attached note, the allegation that the note was in default was false. Title 12 O.S.Supp. 1987 § 2011, provides in part:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record.... The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information and belief there is good ground to support it; and that it is not interposed for delay. If a pleading is not signed or is signed with intent to defeat the purpose of this section, it may be stricken as sham and false and the action may proceed as though the pleading had not been served. For a willful violation of this section, an attorney may be subjected to appropriate disciplinary action. Similar action may be

taken if scandalous or indecent matter is inserted.

Defendant's position is further supported by the language in 12 O.S. 1981 § 1031, which grants the trial court the power to vacate its previously rendered judgment for "mistake, neglect or omission of the clerk or irregularlity in obtaining a judgment or order," and for "fraud, practiced by the successful party, in obtaining the judgment or order."

 Resolution of this appeal becomes a policy consideration. Clearly the petition did not state a cause of action. From the face of the petition and the note attached, the note was not yet in default. At the time the default judgment was entered, Plaintiff's cause of action had not yet accrued and Plaintiff was not yet entitled to any relief. A default judgment must obviously be set aside if the court had no jurisdiction over the subject matter to enter the judgment. *Farmers' Union Co-operative Royalty Co. v. Woodward*, 515 P.2d 1381 (Okla.1973).

 Counsel for Plaintiff has never denied that the note was not yet due when he filed the petition and sought the default judgment. He even admitted that the judgment was perhaps premature. Conversely, Defendant's only excuse for failing to file a timely answer was that it depended on the integrity of opposing counsel and the court to discover the fraud. Defendant did file its motion to vacate within the thirty days and has definitely stated a meritorious defense—that the note was not in default. The circumstances surrounding the judgment cast serious doubts on its validity. Although Defendant's neglect is inexcusable, a more serious problem is Plaintiff's conduct in misleading the court. For these reasons, the default judgment must be vacated.

 Concerning Defendant's request for sanctions against Plaintiff, this matter is better left for the trial court to decide. *See, e.g., Dreiling v. Peugeot Motors of America, Inc.*, 768 F.2d 1159, 1165 (10th Cir.1985). As Defendant notes, in a number of federal circuits, the motion for sanctions may be filed even after the filing of the appeal. *See, e.g., Overnite Transportation Co. v. Chicago Industrial Tire Co.*, 697 F.2d 789, 793 (7th Cir.1983).

The trial court's order overruling Defendant's motion to vacate the default judgment of October 23, 1985, is reversed and the case is remanded for further proceedings, including the issues of fraud upon the court and the appropriate disciplinary action therefor.

BACON and REIF, JJ., concur.